Lahtinen, J.
(concurring). While I agree with the concurrence, I write separately to stress the need that this matter proceed without delay to a hearing. In light of the protracted delays and meandering procedures that have marked this proceeding, principles of equity and fundamental fairness—as well as maintaining integrity of the administrative process—require that a hearing be held expeditiously (see Matter of Louis Harris & Assoc. v deLeon, 84 NY2d 698, 708 [1994] [Bellacosa, J., *1214 concurring] [“Actually and perceptually, the quality of justice and fragile respect for its administration suffers seriously when lengthy delays are tolerated”]). Respondent Commission on Public Integrity has been investigating petitioner since January 2009, its investigation has been extensive, the underlying facts do not appear complex, the Commission purported to have sufficient independent proof to issue a notice of reasonable cause (hereinafter NORC) nearly two years ago, and it officially made public its accusations at that time (having apparently leaked the information prior thereto). Under the circumstances of this proceeding, the time for a prompt hearing on the merits is at hand.
Briefly, the Commission’s first 15-day letter (see Executive Law § 94 former [12] [a]) in January 2009 alleged conduct from a time frame prior to when the Commission had jurisdiction over the State University of New York Research Foundation. It took the Commission a year, until January 2010, to correct the error and bring its allegations into a time frame over which it had jurisdiction. In July 2010, Supreme Court (Teresi, J.) ordered that the Commission keep its records sealed. A March 2011 subpoena resulted in negotiations and an agreement that petitioner would give a sworn statement followed by an unsworn statement, the latter being his “opportunity to be heard” regarding the alleged conduct (Executive Law § 94 former [12] [a]). These statements were to begin on May 5, 2011.
However, on April 18, 2011, a detailed story appeared in the media naming petitioner as a target of the investigation, and the source of the article was attributed to a person participating in the investigation. Thus, the Commission charged with investigating ethics was now ostensibly leaking “confidential” information, conduct which, under the current statute, would be a crime and result in an inspector general investigation (see Executive Law § 94 [9-a] [c]). As a result, petitioner expressed his legitimate concerns regarding the fairness and integrity of the process in a detailed letter to the Commission. Upon receipt of a rather cavalier response, petitioner opted to withdraw from the negotiated agreement regarding his May 5, 2011 appearance.
On May 13, 2011, the Commission issued its NORC. It also issued the disputed subpoena, which, as the other concurrence explains, demanded that petitioner appear at a “hearing,” when, in fact, no hearing had been scheduled. On May 24, 2011, this proceeding ensued. While I agree that the statutory scheme does not necessarily terminate investigative powers when the NORC is filed, this matter is—hopefully—sui generis. Ide *1215 ally, the Legislature should clarify whether a target of an investigation by the Commission is subject to a prehearing subpoena after a NORC is issued. Nevertheless, the delays and breaches by the Commission in this matter do not reflect well on it, its goals, or the process. This is not to suggest that petitioner may not have engaged in the alleged conduct; but, the point is that he is entitled to an expeditious hearing to attempt to clear his name. The time for any procedure that could potentially further delay a hearing on the merits has passed.
Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as denied respondents’ motion; motion granted; and, as so modified, affirmed. [Prior Case History: 33 Mise 3d 161.]